## HENRY HYER *v.* TREADWELL S. AYRES.

When a non-resident comes into this jurisdiction, for the purpose of prosecuting a non-resident, and seeks to arrest him under circumstances seemingly oppressive, and indicating a desire to annoy and subject the defendant to unusual inconvenience, the court will inquire much more closely, and scrutinize with greater strictness, if not severity, the case which the plaintiff presents, (as the foundation of his application for an order to arrest the defendant,) than would be deemed requisite if this peculiarity did not exist.

And in such case, if the court deem the case made by the plaintiff involved in great doubt, an order of arrest will not be sustained.

THIS was an appeal by the plaintiff, to the general term, from an order granting a motion to vacate an order of arrest, under circumstances detailed in the opinion, given on the decision at a special term, which is inserted as follows:

. WOODRUFF, J.—The defendant in this action is an attorney and counsellor at law, residing and conducting his professional business at Memphis, in the state of Tennessee. While on a visit to this city he was arrested and held to bail in this action, at the suit of the plaintiff, who resides at Pensacola, in the state of Florida.

It appears, that early in the year 1846, the defendant was employed by several merchants of this city, as their attorney and counsellor, to collect for them debts due from one Sydney Kopman, then a merchant in Memphis, and that he took measures for that purpose, and had succeeded in obtaining a confession of judgment, upon which a judgment was to be perfected at a coming term of the court.

That thereafter, under an apprehension that other creditors might attach his property, and thereby gain a preference over those whom he wished to secure, Kopman, on the 18th day of March, 1846, executed an assignment to the defendant, conveying to him certain property in trust for the payment of his debts.

That a debt of $3,800, due to the plaintiff herein, was directed to be paid, in preference to the general creditors of Kopman; and a clause was inserted in the assignment, by the terms of which those of the general creditors, and those only, who should accept their dividend under the trust and discharge the debtor, should receive any thing therefrom, and any surplus which might, by reason of the refusal of creditors to accept, &c., remain in the hands of the trustee, should be held by him for the benefit of the assignor.

The assignment was drawn by the defendant; and after its execution he entered upon the duties of the trust, received the property, &c.

He sold property, received money and paid the plaintiff $500 on account of his preferred claim, and paid some money to other creditors.

But in February, 1847, a bill in equity was filed by some of Kopman's creditors to set aside the assignment, upon various grounds, and an injunction was obtained, staying the proceedings of the defendant under the trust. Other creditors filed similar bills, and the litigation which ensued was continued until the 17th day of May, 1851, when, by a decree of the Supreme Court of Tennessee, the assignment was declared fraudulent in law, and void by reason of the clause therein contained, above described, in this respect affirming the decree of the inferior court in which the bills were filed, and further decreeing payment in full to the creditors who had filed bills, and a distribution of the residue of the trust funds ratably among all the other creditors, including the plaintiff in this action.

The allegation against the defendant, upon which the order of arrest herein is founded, is "misconduct and neglect in a professional employment," or that he has received money for the plaintiff in a fiduciary capacity, which he has neglected to pay over or fraudulently misapplied, under section 178, subdivision 2, of the Code of Procedure.

The complaint sets out facts in support of the general allegation in substance as follows:

Hyer *v.* Ayres.

That the plaintiff employed the defendant as his attorney and counsellor, to assist the said Sydney Kopman, by his professional advice and counsel, to secure the debt due to the plaintiff. That the defendant advised the execution of the said assignment, and carelessly, negligently and fraudulently inserted therein the clause above mentioned, and before the execution thereof, negligently and fraudulently advised the said Kopman that the same would not invalidate the assignment.

That he received money, as trustee, to an amount more than sufficient to pay the plaintiff's debt, before any bill was filed by creditors to avoid the assignment, which he neglected to divide and pay over, but used for his private gain.

That he recommended, incited and fraudulently induced the creditors to commence suits to invalidate the assignment, combining with them for that purpose, in order to defraud the plaintiff of his debt, calling their attention to the clause in the assignment above referred to.

That suits were commenced in consequence, and the assignment adjudged void as above stated.

The affidavit in behalf of the plaintiff, upon which the order mainly depends, is made by the debtor, Sydney Kopman, himself, who professes to act as the agent of the plaintiff, his relative.

The defendant, by his affidavit, supported in some important particulars by others, denies most unequivocally every imputation of fraud, misconduct, or negligence as trustee, and utterly denies having ever seen the plaintiff, or having been in any manner retained or employed as the attorney or counsel of the plaintiff in this matter, or having undertaken to direct or advise any thing on his behalf; on the contrary, he alleges that he was already, before the time of the making of the assignment, employed and acting as the attorney of creditors of Kopman, as Kopman well knew, and was pressing Kopman for payment, when he (Kopman) requested him to prepare an assignment; and further, he avers that the objectionable clause was insisted upon by Kopman, and inserted against the defendant's express advice.

That the defendant had then no reason to believe, and did not believe, that such clause would render the assignment invalid, but that he advised against the insertion because he deemed it injudicious, calculated to create dissatisfaction among the general creditors, and prejudicial to the particular creditors whose claims he held for collection.

He also denies that he either negligently or fraudulently delayed the distribution of the trust funds, or incited the creditors to impeach the assignment, or combined with them for that purpose, and avers that he acted throughout in good faith. That there was no adjudication warranting a belief that the clause aforesaid would invalidate the assignment in the courts of Tennessee; that he did not doubt nor have reason to doubt its validity; and that his opinion that the assignment was valid was sustained by the opinion of eminent counsel in that state; and he still believes that the weight of authority, according to the decisions in that state, prior to the making of such assignment, was in support of the validity of such assignment.

This case is in some respects peculiar. The defendant is arrested at a great distance from his own home, while on a temporary visit to this city, at the suit of a plaintiff who resides at a still greater distance from this place, in Florida.

The cause of action, if any, arose in Tennessee, where the defendant resides. The main ground relied upon, in support of the arrest, involves the question of the defendant's negligence or want of professional skill and integrity in such a manner as to depend very much upon proof of the unwritten law of Tennessee, to be had from professional witnesses, whose experience and familiarity with the course of previous decisions in those courts may enable them to speak on the subject. To some extent it involves an inquiry into the prevailing opinions and past experience of members of the legal profession generally in that state. Nearly every fact which may be material to show the actual conduct of the defendant in the management of his trust, must be proved by wit-

nesses residing in Tennessee. The defence must, under such circumstances, be conducted in this state at a great disadvantage to the defendant.

There does not appear to me to be any important reason why the plaintiff should choose to litigate the case here—at a great distance from his own residence as well as from that of the defendant—unless it be that in an action involving the defendant's character, as well as professional capacity, his chances of success are greater, by compelling the defendant to defend among strangers, and under the disadvantages above referred to.

It is true that two or three of the plaintiff's witnesses are said to reside here, but so also many of his witnesses must, I think, be sought in Tennessee, and a very large portion of his evidence seems to be documentary, and can be used conveniently any where.

I felt much inclined, on the argument of this motion, to hold that, where it appears to the court that—although a *prima facie* ground of arrest was established—the selection of this forum by a non-resident, and the arrest here, were unnecessary and oppressive, and tended to produce injustice to the defendant, the order ought not to be granted; and, in my judgment, neither state comity, constitutional obligation, nor justice to non-resident parties, requires us to be liberal in encouraging the inhabitants of twenty-nine other states to come into our courts to determine controversies that can be as well adjudicated where the cause of action arises.

But for the present I content myself with saying, that if the peculiarities of this case, and the considerations above suggested, be not deemed sufficient to warrant the withholding, from a non-resident, an order for arrest upon a state of facts clearly shown, upon which, by our laws, an order may be granted, they do furnish sufficient reasons for scrutinizing with peculiar care the case presented by the affidavits of the parties. And though our tribunals are open to all for the trial and determination of the action, yet, if the special power of the court is invoked to aid the prosecution by ap-

plying one of the provisional remedies which now consti-
tute exceptions to the general course of proceeding in ac-
tions in this state, we may justly require, under such cir-
cumstances as are presented in this instance, that the plain-
tiff's case be very satisfactorily made out upon the affidavits ;
and this, I think, we may properly do, without denying that
it is, in general, improper to try the merits of an action upon
affidavits and on a motion of this description.

With this view I have given a somewhat laborious exami-
nation to one hundred and fifty manuscript pages of plead-
ings, affidavits and arguments laid before me, chiefly on the
part of the plaintiff, on this motion.

I have considered, in detail, the various and minute allega-
tions made by the plaintiff, and the argument of his counsel
founded thereon. No moderate limits would enable me to
discuss each of them, with a view to an opinion upon each
allegation and point of argument separately.

I am, therefore, constrained to state, in somewhat general
terms, the result of my examination and reflection.

*First.* The assignment under which the defendant held the
trust fund was illegal and void as against the general cred-
itors of Sydney Kopman. This has been finally adjudged by
the proper tribunal, and must be assumed by us and all the
other courts.

(1.) The defendant violated no legal nor equitable right
and neglected no duty, even if he intentionally delayed the
carrying of the illegal assignment into effect.

The moment the validity of the assignment was questioned
by the creditors, he would have been justified in refusing to
do any thing to the prejudice of what now appears conclu-
sively to have been their rights against the plaintiff.

(2.) The plaintiff's rights, under the assignment, must be
considered as fixed and settled by the final decree of the
Supreme Court of Tennessee. In those rights he has been
fully protected.

(3.) It may be true, that if the defendant had paid the
plaintiff's debt in full, according to the terms of the illegal

assignment, before a suit was commenced to impeach it, he would have been protected in such payment.

But it by no means follows that he was bound to do so in the face of expressed dissatisfaction on the part of the general creditors, at the peril of the consequences.

And if he is to be deemed *prima facie* bound to go on with the execution of the trust until a suit was commenced against him, it appears to me that the decree declaring the assignment void, and directing a different appropriation of the property, is not only a discharge of the obligation but a defence to any claim that such *prima facie* duty previously existed and was not performed.

It is unreasonable to say that the defendant incurred a liability to this plaintiff by not doing what the proper tribunal, with both plaintiff and defendant before them, forbade him to do.

Although in an action between the plaintiff and defendant, to compel the execution of the trust, the latter might not have been permitted to set up as a defence the mere fact that the assignment was illegal, for though illegal against creditors, if they assented to it, the defendant must execute it; yet the moment adjudication is had, at the instance of creditors, declaring the assignment void, it is for ever settled that the plaintiff ought not to have had the benefit of its provisions, and therefore has not been injured.

(4.) It is by no means satisfactorily shown, by the affidavits, that the defendant did any thing to induce the creditors to attack the assignment, beyond an open and undisguised exhibition of the assignment, with all its provisions, and a frank statement of the condition of the trust to parties interested therein.

To all this he was bound as trustee, no less for their benefit than for the plaintiff.

As *trustee* he was no more bound to protect the one than the other. He was bound to take all legal and proper measures to sustain the whole assignment, when attacked, and there is no pretence in the affidavits that the suits in Tennessee were

not defended with industry and perseverance, so far as in the defendant's power, aided by proper counsel.

But if there be a doubt upon this question of fact, I am not aware that it can be deemed a legal or equitable *wrong* to the plaintiff, that the defendant encouraged other creditors to assert what now appears to have been, as between them and the plaintiff, *their rights.*

. Besides, it is not denied that the plaintiff had, long before the assignment, been retained by some of the creditors, and was at that very time acting as their attorney and counsel.

Can we say that in the particular last mentioned he owed a higher duty to the plaintiff than to them? That his obligations to the *plaintiff* to *conceal* his opinions or even conjectures was stronger than his *duty* to *them,* (who first employed him,) *to be full* and *free* in his disclosures, and to advise them according to his judgment of their best interest?

His relation to them was fully known to Sydney Kopman, who now professes to have acted in the matter in part as the plaintiff's agent before the assignment was executed.

These views seem to me to dispose of such of the grounds urged to sustain the order of arrest herein, as relate to the acts of the defendant subsequent to the assignment.

The plaintiff's claims, in this particular, rest mainly, if not entirely, upon the idea, that because the court would not have compelled the plaintiff to refund the money, therefore the defendant is liable for not having paid it to him.

A voluntary payment cannot be recalled, and yet the performance of a voluntary promise to pay cannot be compelled; so that nothing follows from the fact, that if the plaintiff had been fortunate enough to secure the payment before the creditors asserted their rights, those rights would have been practically defeated.

And it is proper that I should say, upon this branch of the subject, that I find no satisfactory evidence of any fraudulent conduct on the part of the defendant while acting as trustee.

The complaint and the affidavit of Kopman, the original

debtor, who makes oath on behalf of the plaintiff, abound in the terms, "fraud," "fraudulent" and "fraudulently," and "with intent," &c., but I think the facts stated do not warrant them.

On the contrary, when taken in connection with the defendant's letters, which the plaintiff uses in his own behalf, it seems to me that the idea of fraud, on the part of the defendant, is abundantly repelled.

*Second.* The remaining ground upon which the order of arrest is sought to be sustained, appertains to the preparation of the assignment, and the advice given to Sydney Kopman, in regard to its proposed provisions, and it is claimed that the defendant was retained by the plaintiff as his attorney, and in the discharge of his duty as such was guilty of fraud, negligence, and want of skill.

(1.) I am not satisfied that the relation of attorney and client ever existed beween the plaintiff and the defendant.

It is true that Sydney Kopman states that he consulted and retained the defendant in his capacity of attorney and counsellor, on behalf of the plaintiff, and that as such counsellor and attorney he advised, &c.

These statements are not wholly inconsistent with the defendant's denial, that he never was retained nor employed in the name of the plaintiff, nor knowingly undertook to advise the plaintiff, directly or indirectly. The mere fact that the chief *motive* and real *purpose* of Kopman, in taking advice and employing the defendant, was to secure the plaintiff, and that he acted in that sense on behalf of the plaintiff, was not sufficient to create the relation of attorney and client between the plaintiff and the defendant; and yet, I apprehend, that this is all that Kopman intended to swear to. Nor would the subsequent approval of what Kopman did bring the defendant into any such relation to the plaintiff by retro-action.

Nor, in my judgment, does the correspondence produced by the plaintiff at all show that any such relation was contemplated by either of the parties.

Besides, it is uncontradicted, that the defendant was at

that very time acting as the attorney and counsel for some of the general creditors against Kopman, not so as to render it improper for him to draw the assignment or accept the trust as the best thing for his clients he could obtain from Kopman, but so that it would not have been proper for him to accept employment, and advise *adversely* to *them;* and this Kopman knew.

Again, such retainer and employment are not only denied by the defendant, but are unqualifiedly contradicted by the defendant's brother, who was present at the time.

If this view be taken, all grounds for sustaining this order, founded upon alleged neglect or breach of duty, as the plaintiff's attorney, &c., fail.

(2.) On this branch of the subject, I say, as upon the other, the proof fails to satisfy me that there was any fraud on the defendant's part in this matter.

The whole case, as developed in the affidavits, seems to me to disprove any such idea.

(3.) There is no fact in the plaintiff's papers, showing that the defendant exhibited a want of professional skill and prudence in preparing the assignment, except the single one— that the courts of Tennessee declared the assignment illegal and void.

It seems hardly necessary to say, to those who are acquainted with the almost endless diversity of views and determinations on the subject of fraud in law, fraudulent conveyances, invalid trusts, &c., that in a state where the particular point has never passed under the review of the courts, an adjudication like the one in question cannot be deemed sufficient evidence of want of skill or care, if there is the slightest proof of previous doubt.

In this state we should not now deem the point at all doubtful, and yet it is not twenty years since the subject was not only deemed debatable, but was involved in a general conflict of professional opinion. (See *Grover* v. *Wakeman,* 11 Wend. 187, 195.) In other states, assignments containing similar provisions, have been repeatedly held valid.

Hyer *v.* Ayres.

The plaintiff may be able at the trial to establish a cause of action.  He will of course have an opportunity to do so, but, I think, upon the proof laid before me upon this motion, the order of arrest should be vacated.

It may, however, be just to the plaintiff, who will perhaps desire to submit the question to the court, in general term, to give him an opportunity to do so in some manner enabling him to retain the benefit of the original order, if the court, in general term, should deem my conclusions erroneous.

The order hereon may, therefore, be framed in such manner as to be inoperative as a discharge of the defendant, or his bail, (provided the plaintiff appeals from the order within a reasonable time,) until the decision of the court on appeal. With that view, the order may be drawn up by the defendant's counsel, and settled upon due notice to the attorney for the plaintiff.

*Charles H.* and *C. Bainbridge Smith,* for the plaintiff.

*John E. Burrill,* for the defendant.

INGRAHAM, FIRST J.—I concur in vacating the order of arrest in this case, with the qualifications stated in the opinions of my brethren as to the propriety of holding to bail, under the peculiar circumstances in which this action was brought.

DALY, J.—After a very full examination of the case, I am of opinion that the order of arrest should have been vacated, and have nothing to add to the reasons set forth in the lengthy opinion below, except that the right to hold to bail does not depend exclusively upon the question of residence or non-residence; but where a non-resident comes into this jurisdiction for the purpose of prosecuting a non-resident, under circumstances seemingly oppressive, or indicating a desire to annoy and subject him to unusual inconvenience, the court will scrutinize the case closely, and exercise a sound discretion in the matter.

Hyer *v.* Ayres.

WOODRUFF, J.—I have attentively reconsidered the matters embraced in the order appealed from herein, and have re-examined the affidavits read at the special term. Upon a review of the whole subject, I am strengthened in the views which I there expressed, and fully confirmed in the opinion that the plaintiff does not present a case in which the order of arrest should be sustained.

It is, therefore, unnecessary to consider the point, (not dwelt upon in the opinion pronounced below,) that no action will lie at law, nor in the form of the present action, by a *cestui que trust* against the trustee, for neglect or breach of duty in the administration of property assigned to him for the benefit of the plaintiff and other creditors of the assignor. That sub-ject was discussed before us in another case, at the November term, 1852. (*a*) Doubtful as that is, the objection only goes to a part of the alleged cause of action.

My opinion at the special term is, therefore, adopted by me as my opinion on this appeal. A suggestion from one of my brethren leads me to add, that that opinion does not rest upon the ground that the RIGHT to hold to bail depends at all upon the residence or non-residence of the plaintiff or of the defendant. On that point it goes no further than to say, that when a non-resident comes into this jurisdiction, for the purpose of prosecuting a non-resident, under circumstances seemingly oppressive, and indicating a desire to annoy and subject the defendant to unusual inconvenience, the court will inquire much more closely, and scrutinize with greater strict-ness, if not severity, the case which the plaintiff presents as the foundation of his application for the order to arrest.

The order appealed from should be affirmed.

---

(*a*) See the case of *Bishop* v. *Houghton*, 1 E. D. Smith's C. P. R. 566.